## Case No. 5,000.
### FOWLER v. DILLON et al.
[1 Hughes, 232; [1] 12 N. B. R. (1875) 308.]

District Court, E. D. Virginia.

---

[1] [Reported by Samuel H. Hempstead, Esq.]

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

HUGHES, District Judge. The question is, can this court require the creditors in these judgments to scale these debts? The courts of Virginia, as courts of equity, have frequently interfered when their powers were invoked to rectify the amounts for which judgments at law have been taken expressed in Confederate money. And besides this prescriptive equitable power to correct mistakes in judgments, and prevent the enforcing of unconscionable claims, exercised by these courts as courts of chancery, the legislature has conferred statutory powers upon the courts in this class of cases. Recognizing the equity of thus scaling debts contracted in an inflated and depreciated currency, and in order to secure uniformity of procedure, the general assembly of Virginia, in Acts of Assembly for 1872–73, p. 219 (Code 1873, p. 982), passed laws allowing proof of the real consideration of Confederate contracts to be made; directing Confederate debts to be scaled by a fixed schedule of values; giving remedies in the courts against judgments for Confederate debts obtained after the war by default, and obtained during the war for Confederate amounts; and giving the courts power, upon evidence, "to scale the said debts and judgments" as of such date as may to the court seem right "in the particular case."

The courts of the state, as courts of chancery, have not considered that in exercising this power to adjust the amounts due upon money contracts according to principles of equity and good conscience, they were violating or impairing contracts; but have thought, rather, that they were executing them according to the real intention of parties. And the general assembly of Virginia has not, in endeavoring to fix a schedule for the graduation of contracts, thought for a moment that it was abrogating or impairing contracts; but rather that it was providing a legal basis for the private settlement of Confederate contracts, and thus preventing the necessity of carrying every such contract into the courts.

I do not, therefore, concur in the proposition of counsel for the judgment creditors of Hough, that judgments by default for the full amount of money called for by Confederate contracts are vested rights, beyond the reach of an act of assembly or a court of equity. The power of the court of chancery over judgments at law has not been disputed since the reign of James I., and extends to the proceeding at law in every stage. Story, Eq. Jur. § 886; Kerr, Inj. pp. 21–27; and Spence's Eq. Jur. p. 674. In repeated cases in Virginia have the state courts, as courts of equity, interfered to rectify the amounts recovered by judgment on Confederate contracts, by scaling them to their equitable value. And the general assembly

of Virginia has, in chapter 43, § 10, of the Code, recognized this power in courts of equity, and forbidden its abridgment. by providing that nothing in the act making provision for the correction of judgments and adjustment of accounts due upon Confederate contracts "shall be construed to take away or impair the ordinary jurisdiction of courts of equity." It has, moreover, given a remedy by summary motion in courts of law to any defendant aggrieved by judgment on default for Confederate money, rendered since March 3d, 1866. Certainly, if such judgments may be opened by summary motion on notice to the creditor, there can be no successful denial of the power of a court of equity, clothed with a prescriptive jurisdiction over contracts and judgments, which has existed for nearly three centuries, to correct judgments of the class under consideration, by enjoining creditors from enforcing them.

If, therefore, this were a court of the state sitting in chancery, upon a general creditors' bill, brought for the marshalling and distribution of the effects of an insolvent debtor, there would be no doubt not only of its power to look into the consideration of the contracts on which the judgments against Hough were obtained, for the purpose of rectifying them, but it would be its duty to do so, and to reduce the amounts to their proper value for the benefit of the creditors of the estate.

The proceeding in bankruptcy is nothing more nor less in its nature and objects than a general creditors' bill; and the bankruptcy court is in effect a court of chancery, established for the specific purpose of administering a bankrupt's estate under a proceeding which is in effect a general creditors' bill. As such, it has precisely the same powers in equity over judgments of state courts affecting the bankrupt's estate, which a state court of equity would have under a general creditors' bill, if the debtor were not a bankrupt. It is true that the bankrupt act [of 1867 (14 Stat. 517)] forbids the summary proceedings in bankruptcy to be used where third persons, other than the bankrupt and his creditors, are to be affected, and requires, in such cases, that the proceedings taken in the district court shall be plenary proceedings, in the form of a suit in equity. This requirement has been enforced in the present case; and the question is, has this court power to look into the consideration on which the debts of Hough, the bankrupt, were founded, which are the subject of the judgments that have been described?

As a court of equity, clothed with power and jurisdiction over "all cases and controversies between the bankrupt and his creditors, for the collection of assets, and the ascertainment and liquidation of liens thereon, and for the marshalling and disposition of the different funds and assets, so as to secure the rights of all parties, and to effect a due distribution of the assets among all the creditors," this court has not only the same power as a state court of equity to restrain the enforcement of a judgment at law recovered against a bankrupt for an improper amount, but it is its peculiar duty and province to do so. As the state courts of equity do not·hesitate, when invoked, to restrain the enforcement of judgments for the full amount of confederate contracts, it cannot be deemed an unusual or unauthorized stretch of power in a bankruptcy court sitting in chancery to do the same thing.

I have already stated the reasons which induce me to reject the idea that judgments of the class under consideration confer vested rights, and cannot be disturbed, except by violating the constitutional inhibition against impairing the obligation of contracts. Congress is not subject to this inhibition, and the courts of the United States may proceed in the discharge of the functions with which they are clothed by congress without violating it. But in this case no such objection can hold good. To correct a judgment at law so as to conform the amount recovered by it to the real intention of the parties, and render it consistent with justice and equity, is not to impair the obligation of contracts, but the reverse.

There is but one other question left for consideration; and that is whether, after judgment by default, the judgment creditor may be made to abate the interest which accrued on his debt during the period of the late civil war. I think the principle is settled in Virginia, that interest during a period of war is not recoverable except by the express allowance of the court or a jury. Judge Joynes, president of the district court of appeals at Petersburg, said in the case of Tucker v. Watson, 6 Am. Law Reg., (N. S.) 220, upon a review of the authorities on the subject: "After such an array of judicial opinion and authority, including at least one express decision of the court of appeals of Virginia, we do not feel disposed, if we were at liberty, to examine the question as an original one, and do not think it necessary to explain the various grounds on which the decisions referred to have been placed..... We are of opinion that interest during the war is not recoverable."

The laws of Virginia have, from the earliest history of the commonwealth. left the question of interest, in every contract, to the discretion of the jury. The language of Code 1849, p. 673, is: "The jury, in any action on contract, may allow interest on the principal sum due, or any part thereof, and fix the period at which such interest shall commence." The language is repeated in Code 1873, p. 1120, § 14; as taken from the act of assembly of 1872–3 (chapter 353), passed April 2, 1873. This act gives the same power over interest as to all future contracts. The same act, in another clause, gives power to the court or jury to allow or disallow interest arising dur-

ing the period of the late civil war. The same act, in another clause, provides that on any "judgment or decree heretofore rendered, which has not been paid, the defendant may, on motion, after ten days' notice to the plaintiff, cause the same to be reviewed by the court in which it was rendered, and if it shall appear from the record that the judgment embraces (war) interest, it shall be lawful for the court to cause said judgment to be abated to the extent of the interest so embraced." These provisions of statute law, all taken together, conclusively show that in Virginia interest is deemed to be a subject not of natural, but of statutory right, to be allowed to a creditor only when and to the amount prescribed by statute or by the tribunal intrusted with power over the subject. And the last clause above quoted is virtually an assertion by the legislature, that its power is so complete that judgments for interest shall not confer a vested right, which shall transcend the power of the legislature or the courts and juries to reach it.

The settled law of Virginia being not only generally that interest is subject to the discretion of a jury, but, specially, that interest during the period of war shall not be taken, except by allowance of court or jury after contest, it follows that if a judgment has gone by default for interest during the war at any time before the act of 1873, it is within the province of a court of equity to require the creditor in such a judgment to abate the interest. The judgment does not confer a vested right, and covers an inequitable claim, which it is against the policy of the law of Virginia to allow.

I return, therefore, to the question whether this court, as a court of equity, with jurisdiction and power over the creditors in the judgments under consideration, may compel those creditors to abate the war interest on their debts. If they had recovered those judgments after contest, and after the passage of the act of assembly of 1872–73, c. 353, then the subject may have been res adjudicata, and the creditors might not have been interfered with. But, as laid down by Judge Marshall, in [Marine Ins. Co. v. Hodgson] 7 Cranch [11 U. S.] 336: "Any fact which clearly proves it against conscience to execute a judgment, and of which the party enjoined could not have availed himself at the trial at law.... will authorize a court of equity to interfere by injunction to restrain the adverse party from availing himself of such adverse judgment."

Not doubting, therefore, the power of this court over the creditors in these judgments, and seeing that the laws of the state declare that the collection of war interest is inequitable, and that the law authorizing the disallowance had not been passed at the time that these judgments were rendered, I am of opinion that this court ought to interfere to require an abatement of the war interest on these judgments; and that it ought not to put the bankrupt or the assignee to the needless task of applying to the courts of law which rendered these judgments for an abatement of this war interest.